## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Vicki Piontek<br>951 Allentown Road<br>Lansdale, PA 19446<br>　　　　　　Plaintiff<br>Vs.<br>Asset Acceptance, Capital Corporation<br>28405 Van Dyke Avenue,<br>Warren, Michigan 48093<br>and<br>John Does 1-10<br>and<br>X,Y,Z Corporations<br>　　　　　　Defendant(s) | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | 12-3871<br><br><br><br><br>Jury Trial Demanded |

**FILED**
AUG 20 2012
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

### PLAINTIFF'S FIRST AMENDED COMPLAINT

1. This is an action brought by a consumer for violation of alleged violations of the Fair Credit Reporting Act (FCRA), 15 USC 1681 et. Seq. as well as the Fair Debt Collection Practices Act, 15 USC 1692 et. seq.

2. Plaintiff is Vicki Piontek, an adult individual with and address including but not limited to 951 Allentown Road, Lansdale, PA 19446.

3. Defendants are the following:

    a. Asset Acceptance, Capital Corporation, also referred to in this Complaint as "Asset," a business entity whose principal place of business is located at 28405 Van Dyke Avenue, Warren, Michigan 48093.

    b. John Does 1-10, individuals or business entities whose identities are not known to Plaintiff at this time, but which will become known upon proper discovery. It is believed and averred that such Does played a substantial role in the commission of the acts described in this complaint.

    c. X, Y, Z Corporations, business identities whose identities are not known to Plaintiff at this time, but which will become known upon proper discovery. It is believed and averred that such entities played a substantial role in the commission of the acts described in this complaint.

## JURISDICTION AND VENUE

4. All previous paragraphs of this complaint are incorporated by reference and made a part of this complaint.

5. Defendant(s) regularly transact(s) business throughout the Commonwealth of Pennsylvania, and in this jurisdiction.

6. Defendant obtains the benefit(s) of regularly transacting business in this jurisdiction.

7. A substantial portion of the conduct, transactions, occurrences, acts or omissions complained of occurred in this jurisdiction.

8. This Court has federal question jurisdiction pursuant to 28 USC 1331, 15 USC 1692, et. seq. and 15 USC 1681 et. seq.

9. Jurisdiction for this action is asserted pursuant to 28 U.S.C. §1334-1337.

10. Venuè lies in this District pursuant to 28 U.S.C. §1392(b).

11. Declaratory relief is available pursuant to 28 U.S.C. §2201 and §2202.

### COUNT ONE: VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 USC 1681 S-2 *"Johnson Violation"*

12. All previous paragraphs of this complaint are incorporated by reference and made a part of this complaint.

13. At all times mentioned herein Plaintiff was a consumer as defined by the FCRA.

14. At all times mentioned herein Defendant(s) was a furnisher of information as defined by the FCRA.

15. At all times relevant in this Complaint Defendant(s) was a furnisher of information for purposes of the FCRA.

16. At various times prior to the commencement of this action, Defendant placed derogatory information on Plaintiff's consumer report(s) pertaining to two consumer accounts. See attached exhibits.

17. At various times in writing, Plaintiff contacted Defendant about two alleged consumer debts that appeared on Plaintiff's credit report. See attached exhibits.

18. Plaintiff contacted Defendant for the purpose of disputing derogatory information for two consumer accounts which eventually ended up being placed on Plaintiff's consumer report(s) by Defendant(s).

19. Plaintiff's disputes regarding the two consumer accounts at issue were legitimate and bona fide disputes.

20. Plaintiff's legitimate and bona fide disputes raised the following issues:

    a. The amount of the alleged balance for the account.
    b. Interest.
    c. Finance charges
    d. Other fees
    e. The existence or non-existence of a contract which justified the balance interest, finance charges and other fees.

21. 15 USC 1681 s-2 requires a furnisher to conduct a reasonable investigation of an account which appears on a consumer's credit report, upon written request of the consumer to do so.

22. The United States Court of Appeals for the Fourth Circuit held that the FCRA requires furnisher to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient but potentially incomplete

or inaccurate customer account information. See *Johnson v. MBNA America Bank*, No. 03-1235 (February 11, 2004).

23. At various times in writing, Plaintiff requested that Defendant conduct an investigation about the alleged consumer debt that appeared on Plaintiff's credit report.

24. At no time prior to the commencement of this action did Defendant ever produce a contract or other alternative sufficient proof of the alleged balances for the alleged consumer debts at issue.

25. It is believed and averred that at no time prior to the commencement of this action did Defendant ever conduct a reasonable investigation of the underlying facts and documents to support the amount of the alleged balances for the alleged consumer debts that Defendant(s) was / were attempting to collect from Plaintiff.

26. It is believed and averred that Defendant(s) failed and willfully refused to conduct an investigation of Plaintiff's account in violation of Defendant's duties pursuant of 15 USC 1681 s-2 et. seq.

27. After Defendant(s) failed and willfully refused to conduct and investigation of Plaintiff's account, Defendant(s), Plaintiff was left with no other recourse than to dispute the account with the relevant credit reporting agency (ies) (CRAs).

28. After Plaintiff disputed the account with the relevant credit reporting agencies(s), Defendant(s) then verified the disputed information to the relevant credit reporting agencies, despite having willfully refused to conduct an investigation of Plaintiff's account in violation of Defendant's duties pursuant of 15 USC 1681 s-2 et. seq.

29. After Plaintiff disputed the account with the relevant credit reporting agencies(s), Defendant(s) then verified the disputed information to the relevant credit reporting agencies, despite the fact that Defendant(s) had no underlying contract or alterative sufficient legal proof of the amount of the alleged consumer accounts at issue.

30. By verifying the disputed derogatory information without a proper investigation, Defendant(s) violated 15 USC 1681 s-2 et. seq. of the Fair Credit Reporting Act.

31. By verifying the disputed derogatory information without proper documents, Defendant(s) violated 15 USC 1681 s-2 et. seq. of the Fair Credit Reporting Act.

32. Upon information and belief, it is averred that Defendant(s) has standard practices and policies antithetical to Defendant(s) duties under 15 USC 1861 s-2.

## PRIVATE CAUSE OF ACTION

33. There is no private cause of action under 15 USC 1681s-2(a).

34. But there is a private cause of action under 15 USC 1681s-2(b). See the following case law which distinguishes between the government right of action under 15 USC 1681s-2(a), and the private cause of action under 15 USC 1681s-2(b).

   a. Marshall v. Swift River Academy, LLC, 2009 WL 1112768 (9th Cir. 2009).
      A consumer has no private right of action under FCRA against furnisher merely because the furnisher failed to provide accurate information to consumer reporting agencies.

   b. Beisel v. ABN Ambro Mortgage, Inc., No. 07-2219, 2007 WL2332494, *1 (E.D. Pa. Aug. 10, 2007).
      In order to prevail on a FCRA claim Plaintiff "must prove [he] notified a credit reporting agency of the dispute, the credit reporting agency then notified the furnisher of information, and the furnisher of information failed to investigate or rectify the disputed charge.").

   c. Catanzaro v. Experian Information Solutions, Inc., 671 F. Supp.2d 256, 260 (D. Mass. 2009).
      Notification by a consumer reporting agency to the furnisher is a prerequisite for furnisher liability under FCRA.

    d. <u>Kaetz v. Chase Manhattan Bank, 2007 WL 1343700</u>, *3 (M.D. Pa. 2006). The Court dismissed Plaintiff's Complaint, but only because Plaintiff failed to allege that he disputed the accuracy of the debt to a credit agency, or that the credit agency thereafter reported dispute to defendant.

35. Because Plaintiff first disputed the account with Defendant(s), and then disputed the account with the credit reporting agency afterwards, and then Defendant(s) verified the derogatory information to the Credit Reporting Agency (ies) in a manner that was unacceptable under FCRA, Plaintiff does have a private cause of action against Defendant under these particular circumstances.

## COUNT TWO: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692 f ET. SEQ.
<u>UNCONSTITUTIONAL COLLECTION PRACTICES</u>

36. The previous paragraphs of this complaint are incorporated by reference and made a part of this action.

37. At all relevant times in this Complaint, Plaintiff is a consumer debtor as defined by the Fair Debt Collections Practices Act (FDCPA), 15 USC 1692 et. Seq.

38. At all relevant times in this Complaint, Defendant(s) was / were acting as a debt collector(s) as defined by the FDCPA, 15 USC 1692 et. seq.

39. At all times mentioned herein, Defendant(s) was / were attempting to collect on an alleged consumer debt against Plaintiff.

40. At all times mentioned in this Complaint, Defendant(s) has a duty to comply with all applicable laws governing collection procedures on Plaintiff's consumer account(s), pursuant to 15 USC 1692 f.

41. By breaching its duties under 15 USC 1681 s-2, Defendant(s) also breached its duties under 15 USC 1692 f, to refrain from any collection activity that is illegal or unconscionable.

42. Defendant(s) engaged in illegal and unconscionl;'able collection in violation of 15 USC 1692 f et. seq. (FDCPA), when Defendant(s) violated 15 USC 1681 s-2 et. seq (FCRA).

## COUNT THREE: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692 G ET. SEQ.
### FAILURE TO PROPERLY VALIDATE THE DEBT

43. The previous paragraphs of this Complaint are incorporated by reference and made a part of this Complaint.

44. Colloquially known as a "debt buyer," Asset Acceptance purchases and collects on portfolios of charged-off consumer debts from credit originators such as credit card issuers, consumer finance companies, health clubs, and telecommunications and utilities providers. As of September 30, 2010, Asset Acceptance held more than 34 million individual accounts with an original value of more than $42 billion, purchased for an aggregate of 2.54% of face value.

45. Asset Acceptance specializes in purchasing and collecting on portfolios of older accounts that have previously been placed with one or more third party collectors and are more than 360 days past due. Its strategy for successful collection of such debts includes pursuing consumers for ten years or longer.

46. Asset typically receives the portfolio account data from sellers in electronic databases. Although the data provided varies by portfolio, it typically includes the consumer account holder's name, last known address and telephone number, the

account number and balance (including any interest and fees), the last payment date and/or the charge off date, and, if known, the account holder's Social Security number. The portfolio account data does not include account documents such as contracts signed by the consumer or monthly billing statements.

47. Asset Acceptance's contracts with portfolio sellers include representations and warranties regarding the validity and integrity of the account information it purchases. Such representations and warranties vary with the portfolio seller and the portfolio purchased. In some instances, however, the contracts specifically disclaim the warranties about the accuracy of the account data. In other instances, contracts may warrant the accuracy of only certain information or specify that some of the data may be inaccurate.

48. Individual account documents such as credit applications and account statements that may substantiate the portfolio's data do not exist for some portfolios or for some accounts within a portfolio. Documents are less likely to be available for accounts in portfolios of older debt, portfolios from credit originators that have gone out of business, or portfolios purchased from other debt buyers (as distinguished from credit originators).

49. Although Asset does not usually choose to acquire account documents with a portfolio purchase, Asset's contracts with credit originators allow Asset to order a small number or percentage of available documents for free for a short period of time. After that, Asset must pay the portfolio's seller for additional account documents, if they are available. That document fee can range from $5 to as much as $55 per item.

It can take as long as three to six months for Asset to receive documents ordered from a credit originator.

50. After purchasing a portfolio, Asset loads the new portfolio's data into its collection system, updates consumers' address information by cross-referencing account data with a national change-of-address database, sends initial collection notices to consumers, and reports eligible accounts to the national consumer reporting agencies. Thirty days after sending the initial notice to consumers, Asset assigns accounts to account representatives who attempt to collect the debts by contacting consumers directly by telephone.

51. Asset's electronic collection system provides account representatives with information about the debt, including the charge-off date, whether account documents are available, and, if so, whether they are in-house or must be ordered from the creditor. Asset trains its account representatives to document in its electronic system each contact, or attempted contact, with a consumer.

52. The initial collection notice sent to consumers by Asset includes the name of the original creditor, the original account number, and the balance past due. Asset uses the information loaded into its collection system to generate the initial collection notice.

53. Some consumers who receive an initial collection notice from Asset send Asset, within thirty days of receipt of Asset's initial communication, a written notice disputing the debt. Section 809(b) of the PDCPA requires that debt collectors who receive such a written dispute cease collecting the debt "until the debt collector

obtains verification of the debt" and mails the verification to the consumer. Asset temporarily stops collection action on the debt after it receives such a dispute.

54. Asset sends consumers who dispute the debt as described in Section 809(b) of the FDCPA a form letter containing an account statement prepared with information provided to Asset by the prior creditor. Attached to the form letter is a form document titled "debt validation." Asset generates the information in the form from the portfolio data it purchased and loaded into its collection system the same information that was the basis for the initial collection notice. The debt validation form includes the name of the original creditor, sometimes the address of the original creditor, the original account number, and the balance past due, as well as the consumer's name, address and the last four digits of his or her Social Security number. Asset resumes collection activity on the debt once the form letter is mailed to the consumer.

55. Asset sends the debt validation form to consumers who dispute the validity of the debt regardless of the nature or specifics of the consumer's dispute. In most cases, Asset does not obtain additional information about the debt from the original creditor or any other source or take other steps to reasonably investigate the consumer's dispute. Providing the consumer with the same information from the same database is not obtaining "verification of the debt."

**LIABILITY**

56. The previous paragraphs of this complaint are incorporated by reference and made a part hereof.

57. At all times various employees and / or agents of Defendant were acting as agents of Defendant, and therefore Defendant is liable to for the acts committed by its agents and / or employees under the doctrine of respondent superior.

58. At all times various employees and / or agents of Defendant were acting as agents of Defendant, and therefore Defendant is liable to Plaintiff for the acts committed by its agents and / or employees under the theory of joint and several liability because Defendant and its agents were engaged in a common business venture and were acting jointly and in concert.

## DAMAGES

59. The preceding paragraphs are incorporated by reference and made a part hereof.

60. Plaintiff's actual damages are $1.00 more or less, including but not limited to postage, phone calls, fax, gas, mileage, etc.

61. Plaintiff believes and avers that Plaintiff is entitled to $1,000.00 statutory damages under 15 USC 1681 et. seq.

62. Plaintiff believes and avers that Plaintiff is entitled to $1,000.00 statutory damages under 15 USC 1692 et. seq.

63. Plaintiff suffered some distress and anger as a result of Plaintiff's rights being violated by Plaintiff and likely the rights of other consumers as well. The value of Plaintiff's emotional distress shall be proven at trial.

64. For purposes of a default judgment, Plaintiff believes and avers that the value of such distress is no less than $5,000.00.

## ATTORNEY FEES

65. The preceding paragraphs are incorporated by reference and made a part hereof.

66. Plaintiff believes and avers the Plaintiff is entitled to reasonable attorney fees of $2,800 at a rate of $350.00 per hour, described below.

    a. Consultation with client, review of file on on multiple occasions          2

    b. Drafting, editing, filing and service of complaint, amended complaint and related documents          3

    c. Legal research          1

    d. Followup correspondence with Defense          2

    Total =8          $2,800

67. Plaintiff's attorney fees continue to accrue as the case moves forward.

### OTHER RELIEF

68. The preceding paragraphs are incorporated by reference and made a part hereof.

69. Plaintiff requests and demands a jury trial in this matter.

70. Plaintiff requests punitive damages in this case because Defendant(s)' conduct was willful wanton, intentional and repetitive.

71. For purposes of a default judgment, Plaintiff believes and avers that Plaintiff is entitled to $10,000.00.

72. Plaintiff requests declaratory relief.

73. Plaintiff requests injunctive relief.

74. Plaintiff requests such other relief as this court may deem just and proper.

Wherefore, Plaintiff demands judgment against Defendant(s) in the amount of   $19,801.00 enumerated as follows:

$1.00 actual damages

$1,000.00 statutory damages for FDCPA violation

$1,000 statutory damages for FCRA violation

$10,000 Punitive damages

$2,800 attorney fees

$5,000.00 emotional distress

---

$19,801

Respectfully Submitted,

**MADDEN LAW FIRM, P.C.**

By:/s/Waverley Madden
**WAVERLEY MADDEN**
Attorney for Debtor
21 S. 12th Street, Suite 100
Philadelphia, PA 19107
Telephone: 215-525-0150
Fax: 215-525-0151
bankruptcy@wmaddenlaw.com

Dated: 8-3, 2012